J-S42002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSE SMOOT | : | |
| | : | |
| Appellant | : | No. 2176 EDA 2019 |

Appeal from the PCRA Order Entered July 11, 2019
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0005867-2013,
CP-09-CR-0005868-2013, CP-09-CR-0005869-2013,
CP-09-CR-0005875-2013, CP-09-CR-0005876-2013,
CP-09-CR-0005879-2013, CP-09-CR-0005882-2013,
CP-09-CR-0005883-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSE SMOOT | : | |
| | : | |
| Appellant | : | No. 2259 EDA 2019 |

Appeal from the PCRA Order Entered July 11, 2019
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0005868-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSE SMOOT | : | |
| | : | |
| Appellant | : | No. 2260 EDA 2019 |

Appeal from the PCRA Order Entered July 11, 2019
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0005869-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JESSE SMOOT | : | |
| | : | |
| Appellant | : | No. 2261 EDA 2019 |

Appeal from the PCRA Order Entered July 11, 2019
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0005875-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JESSE SMOOT | : | |
| | : | |
| Appellant | : | No. 2262 EDA 2019 |

Appeal from the PCRA Order Entered July 11, 2019
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0005876-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JESSE SMOOT | : | |
| | : | |
| Appellant | : | No. 2263 EDA 2019 |

Appeal from the PCRA Order Entered July 11, 2019
In the Court of Common Pleas of Bucks County

Criminal Division at No(s):  CP-09-CR-0005879-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSE SMOOT | : | |
| | : | |
| Appellant | : | No. 2264 EDA 2019 |

Appeal from the PCRA Order Entered July 11, 2019
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0005882-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSE SMOOT | : | |
| | : | |
| Appellant | : | No. 2265 EDA 2019 |

Appeal from the PCRA Order Entered July 11, 2019
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0005883-2013

BEFORE:  PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED DECEMBER 15, 2020**

Jesse Smoot appeals from the order denying his first and timely petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), **see** 42 Pa.C.S.A. §§ 9541-9546, following a hearing. On appeal, Smoot principally asserts that he was deprived of his right to counsel prior to trial and additionally raises several ineffective assistance of counsel claims. However,

- 3 -

based on our thorough review of the record as well as the submissions made to this Court, we find that the PCRA court did not commit legal error nor abuse its discretion in denying Smoot's petition. Accordingly, we affirm.

Preliminarily, we note that the factual history of this case is laid out extensively in this Court's decision affirming Smoot's judgment of sentence on direct appeal. *See Commonwealth v. Smoot*, 3154 EDA 2014, 2016 WL 2349091 (Pa. Super., filed May 4, 2016) (unpublished memorandum). Briefly, a jury convicted Smoot of ten robberies and various related offenses that were all derived from a series of armed robberies in both Bucks and Montgomery Counties. As a result, the trial court sentenced Smoot to an aggregate term of twenty-eight to seventy years of incarceration, to be followed thereafter by a lengthy probation period.

After this Court's decision affirming his judgment of sentence, our Supreme Court denied his petition for allowance of appeal. Smoot then timely filed his first PCRA petition, and after being granted a hearing, his petition was denied. Smoot timely appealed the PCRA court's decision to our Court, and both he and the PCRA court have complied with the dictates of Pa.R.A.P. 1925.

On appeal, Smoot presents three issues for our review:

1. Was Smoot deprived of his right to counsel and/or given ineffective assistance of counsel when he did not have counsel for a large portion of his pre-trial period, the trial court created conditions that constructively deprived him of counsel, and his trial counsel did not present this issue to the court?

2. Was trial counsel ineffective for failing to object to the trial court's acceptance of a defense witness's invocation of the right to remain silent?

3. Was trial counsel ineffective for failing to introduce the defense witness's suppression hearing testimony after she became unavailable by invoking her right to remain silent?

**See** Appellant's Brief, at 1-2.[1]

We review the denial of a PCRA petition to ascertain whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. **See Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa.

_____

[1] Smoot presents a fourth issue in his brief, asking whether the appeal at 2176 EDA 2019 should be quashed. **See** Appellant's Brief, at 2.

Following the denial of PCRA relief, Smoot initially filed only one notice of appeal, docketed by our Court at 2176 EDA 2019, which listed eight trial court docket numbers. Correspondingly, this Court issued a rule to show cause as to why his appeal should not be quashed in accordance with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. Super. 2018) (establishing that separate notices of appeal must be filed for each court of common pleas docket number). In response and still within thirty days of the order denying PCRA relief, Smoot filed seven additional notices of appeal, with each listing one trial court docket number. However, Smoot did not refile an additional notice for the case docketed at 2176 EDA 2019. Eventually, this Court *sua sponte* consolidated all eight appeals in this case at docket number 2176 EDA 2019.

We conclude that Smoot has sufficiently complied with the dictates of **Walker** through his curative action of filing seven additional notices of appeal and decline to quash his appeal. **See Commonwealth v. Johnson**, 236 A.3d 1141, 1148 (Pa. Super. 2020) (*en banc*) (indicating that as long as the numerical amount of notices of appeal corresponds to the number of court of common pleas docket numbers and that listing multiple docket numbers on the same notice of appeal does not invalidate any of said appeals); **see also** Pa.R.A.P. 903(a) (providing a thirty-day period for a party to file an appeal).

2014). Moreover, the PCRA court's findings and evidence of record are viewed in a light most favorable to the prevailing party. **See Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Id**.

With little exception, all three of Smoot's claims focus on trial counsel's alleged inaction at various points prior to and during trial. Our case law establishing what constitutes ineffective assistance of counsel is well-settled. First, counsel is presumed to have rendered effective assistance. **See Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010). Second, Pennsylvania courts are guided by the test espoused by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668 (1984). **See Commonwealth v. Pierce**, 527 A.2d 973, 976-77 (Pa. 1987). That test, as adopted by our courts, means that in order to demonstrate ineffectiveness, Smoot must plead to prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." **Commonwealth v. Fulton**, 830 A.2d 567, 572 (Pa. 2003).

Third, Smoot's failure to satisfy *any* one prong of that three-part test renders an ineffective assistance of counsel claim fatally defective. **See Commonwealth v. Jones**, 811 A.2d 994, 1002 (Pa. 2002). Accordingly, we, as an appellate court, "need not analyze the prongs of an ineffectiveness claim in any particular order." **Commonwealth v. Johnson**, 139 A.3d 1257, 1272 (Pa. 2016). Fourth, "counsel cannot be deemed ineffective for failing to raise a meritless claim." **Id**.

Smoot first asserts that he was without counsel for roughly three out of the four months between his arraignment and trial. **See** Appellant's Brief, at 6. In other words, Smoot stresses that because he neither received assistance from the public defender's office nor obtained any private counsel that was, at that point, willing to enter an appearance on his behalf and provide full representation, he was without counsel for approximately sixty-two percent of the time that he was in pre-trial status. **See id**., at 26.

Smoot emphasizes that trial counsel inherently prejudiced him by failing to raise an objection over the time he spent uncounseled and was therefore ineffective. **See Commonwealth v. Reed**, 971 A.2d 1216, 1221 (Pa. 2009). The **Reed** decision discussed **United States v. Cronic**, 466 U.S. 648 (1984), and reinforced the principle that there is a "presumption of prejudice" when a defendant is constructively denied counsel. **See Reed**, 971 A.2d at 1221.

The United States Supreme Court in **Cronic** indicated that actual or constructive denial of counsel can be found "without any showing of prejudice

when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." 466 U.S. at 659 n. 25 (finding the right to counsel to be broader than simply representation during trial). Our Court has interpreted "critical stage" to mean "any stage of the prosecution, formal or informal, in or out of court, where counsel's absence might derogate from the accused's right to a fair trial." **Commonwealth v. McCoy**, 895 A.2d 18, 29 (Pa. Super. 2006) (citation omitted). However, "**Cronic** is limited to situations where counsel's failure is complete, *i.e.*, where counsel has entirely failed to function as the client's advocate." **Commonwealth v. Mallory**, 941 A.2d 686, 701 (Pa. 2008) (citation and quotation marks omitted).

Smoot reinforces his averment of presumed ineffectiveness by citing our Supreme Court's recent decision in **Commonwealth v. Diaz**, 226 A.3d 995 (Pa. 2020). There, the Court found that the defendant's Sixth Amendment right to counsel was constructively infringed when he was unable to consult with his attorney about the substance of his trial due to the absence of an interpreter for the first day of his multi-day trial. **See id**., at 1010-11. Accordingly, no finding of prejudice was necessary because the defendant was unable to confer with his attorney and further had an inability to understand critical portions of his trial. Our Supreme Court considered this denial of effective assistance of counsel to be presumed prejudicial in accordance with **Cronic**. **See id**., at 1010.

Here, after Smoot's arrest, a Bucks County public defender represented Smoot prior to his preliminary hearing. At the preliminary hearing, Smoot's public defender observed that Smoot had sought and retained private counsel. While admitting to the public defender that he was unlikely to take the case to trial, private counsel entered a limited appearance to represent Smoot at the preliminary hearing.

Private counsel again represented Smoot at his arraignment, but because a fee agreement was still being worked out, private counsel was not retained for trial. Furthermore, private counsel did not enter an appearance in the Bucks County Court of Common Pleas on Smoot's behalf. **See** N.T. 11/26/18, at 72-73. However, private counsel did file, *inter alia*, a motion for pretrial release in the interim period between arraignment and trial, but that motion expressly stated that private counsel was not technically retained at the time.[2]

Eventually, with little time prior to his trial, Smoot retained *different* private counsel than the one who entered those previous limited appearances on his behalf. Smoot's new counsel attempted to obtain a continuance, seeking to postpone Smoot's trial date, but was ultimately unsuccessful.

---

[2] It is disputed whether more than one motion was filed. **See** Appellant's Brief, at 32-33 (indicating that Smoot's private counsel only filed a single motion instead of the three cited by the PCRA court, with the other two motions being "merely administrative notations and not filings[.]")

The PCRA court, in denying Smoot relief, found that: 1) Smoot voluntarily declined to be represented by the public defender; and 2) Smoot's initial private counsel, in fact, represented him during the so-called uncounseled period of time. **See** Trial Court Opinion, 11/25/19, at 24-25. We agree with Smoot's assertion that, in accordance with Pennsylvania Rule of Criminal Procedure 121, "[a] waiver of counsel requires a rigorous colloquy and cannot be accomplished through inaction and the passage of time." Appellant's Brief, at 31. We also believe that, in the interest of clarity, Smoot should have been brought before the court earlier in the pre-trial process for an explicit determination of how Smoot intended to proceed by a specific date. We will even assume that Smoot was not actually represented by private counsel when Smoot's private counsel, without having entered an appearance, filed at least one motion on Smoot's behalf.

However, other than the conclusory statement indicating that Smoot "could not know of the investigation that needed to be done; the motion practice that was required; or that the trial court would not necessarily be willing to grant additional continuances required by unprepared counsel once the trial date approached," **id**., at 32, Smoot never identifies any particular critical stage of the proceedings where he was actually or constructively denied counsel. While Smoot heavily draws upon the **Diaz** decision, its holding is materially distinguishable because it dealt with the absence of an interpreter for *an entire day of trial*. More specifically, the appellant in that case "could

not understand anything that occurred during voir dire or opening statements or much of the potentially outcome determinative testimony of the complaining witness." **Diaz**, 226 A.3d at 1010-11. These circumstances led our Supreme Court to conclude that his right to counsel had been violated because the appellant "could not have communicated with his attorney about the substance of the proceedings. Such communications encompass discussions about witness testimony, lines of inquiry to pursue and tactical decisions, all of which are constitutionally protected." **Id**. Similarly, **Appel v. Horn** also dealt with a specific and critical phase of pre-trial proceedings: the ten-day time period between attorney appointment and that appellant's waiver of counsel competency hearing. **See** 250 F.3d 203, 213, 215 (3d Cir. 2001) (finding a competency hearing to be a critical stage of trial and that the appellant's appointed attorneys should have conducted some level of investigation in preparation for that hearing).

Here, Smoot makes no such claim that his alleged deprivation of counsel occurred during any critical pre-trial phase. **Cronic** ineffectiveness is predicated on "omissions of counsel … that are virtually certain to undermine confidence that the defendant received a fair trial or that the outcome of the proceedings is reliable[.]" **Diaz**, 226 A.3d at 1008 (citation omitted). As Smoot has not identified any discrete pre-trial proceeding where he was without counsel or that by being uncounseled, it handicapped him in a subsequent critical phase of pre-trial or trial, we see no reason to believe that, on this

issue, Smoot did not ultimately receive a fair trial. Furthermore, as this Court found during his direct appeal, Smoot had been granted two continuances at his request and effectively clogged the machine of justice through his actions.[3] *See Commonwealth v. Smoot*, 3154 EDA 2014, at *4 (Pa. Super, May 4, 2016). Accordingly, Smoot is due no relief on this claim.

In his next issue, Smoot contends that trial counsel was ineffective in failing to object when the trial court accepted Alicia Cook's invocation of her Fifth Amendment privilege against self-incrimination. He complains that the trial court granted Cook a blanket privilege without first determining the validity of her claim for itself. As a result, Smoot argues, he was deprived of his right to compel witnesses to testify, and counsel failed to object to this deprivation.

We begin by analyzing the arguable merit of Smoot's claim. A defendant is deprived of his right of compulsory process when a trial court accepts a witness's unsupported claim of privilege against self-incrimination. *See **Commonwealth v. Rolon**, 406 A.2d 1039, 1040 (Pa. 1979). A trial court may not merely acquiesce to a witness's desire not to answer any questions. *See id*., at 1041. However, it is always within the purview of the trial court to ascertain whether silence is justified. *See **Hoffman v. United States**, 341

---

[3] While this determination dealt exclusively with Smoot's dropping of his initial private counsel for the counsel he actually employed at trial, we find it relevant to Smoot's *modus operandi* during the prior period of ambiguous representation.

- 12 -

U.S. 479, 487 (1951) ("The trial judge in appraising the claim must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence."). It is only when the answers demanded *cannot* have a tendency to incriminate may the court overrule a witness's Fifth Amendment privilege. **See Rolon**, 406 A.2d at 1041. But, as **Rolon** suggests, if there is *any* evidence linking the witness to criminality, then witness silence could be respected as justified. **See id**.; **see also Commonwealth v. McGrogan**, 568 A.2d 924, 929 (Pa. 1990) ("Where other evidence tends to implicate the witness in criminal activity, the witness may have justification for invoking his Fifth Amendment privilege to prevent being harmed by his own words.").

Where the record contains evidence suggesting a witness's complicity in the crime, a specific factual inquiry is unnecessary. **See Commonwealth v. Allen**, 462 A.2d 624, 627-628 (Pa. 1983). Further, a certainty of prosecution is not necessary; the witness must simply possess "reasonable cause to apprehend danger of prosecution." **Id**., at 627.

Here, trial counsel filed a pretrial motion to suppress Smoot's alleged oral confession made at the police station after being arrested. In his motion, Smoot claimed that the confession was coerced and involuntary because he was upset with the police officers' apparent treatment of Cook. According to Smoot, he only answered the officers' questions after signing away his **Miranda** rights because he wanted to stop his pregnant girlfriend, Cook, from

crying and allow her to be freed from police control. *See* N.T., 1/29/14, at 120-26. Cook, too, testified at the suppression hearing and largely corroborated Smoot's testimony regarding her condition on the day Smoot was arrested. *See id*., at 80-86. Ultimately, the trial court denied Smoot's motion to suppress, finding that the interactions between Cook and police officers did not play a role in Smoot's confession.

At trial, Smoot's counsel sought to call Cook as a witness. At the Commonwealth's suggestion, the trial court appointed counsel to Cook for advise her regarding her right against self-incrimination. *See* Trial Court Opinion, 11/25/19, at 20. After consulting with counsel, Cook invoked her Fifth Amendment right to any question that would be asked of her. *See* N.T., 2/7/14, at 226-227. Trial counsel did not object to Cook's assertion of privilege or otherwise seek to challenge the assertion. *See id*., at 227.

It is undisputed that "Cook never took the stand at trial." Appellant's Brief, at 41. Smoot contends that the Commonwealth procured Cook's unavailability as a witness through illusory threats of criminal liability. He notes that Cook was never charged with any crime related to this case. Further, he highlights that the Commonwealth's description of her possible criminal liability was equivocal: "I don't know that [it is] a complete impossibility" that Cook could be charged as Smoot's accomplice. *See* N.T., 2/7/14, at 8.

As noted previously, actual charges, either pending or subsequent, were not a necessary prerequisite for Cook to properly assert her privilege. *See Commonwealth v. Treat*, 848 A.2d 147, 148 (Pa. Super. 2015) (observing that there is no set formula required for the successful invocation of a witness's right against self-incrimination). Further, while the Commonwealth's warning was certainly equivocal, it just as certainly indicated that the Commonwealth was considering the possibility of charges.

Nevertheless, Smoot argues that counsel should have objected to the court's acceptance of Cook's blanket assertion of privilege without independently evaluating the basis of her assertion. Smoot contends that the court merely accepted that Cook's assertion was counseled and did not engage in any independent legal analysis.

It is true that the court did not explore the nexus between Smoot's proposed questions and any the risk that Cook's answers would lead to any risk of prosecution. However, we conclude that the trial court had sufficient information to intelligently rule upon Cook's privilege claim without any further interrogation.

The trial court had recently heard Cook's testimony at the suppression hearing, so it was well aware of the scope and specifics of her testimony. Further, the court was aware that neither Cook nor Smoot were employed, but that Smoot nonetheless managed to provide money to pay rent for their apartment. *See* N.T., 1/29/14, at 98-99. Finally, the court had heard the

testimony of Smoot's co-conspirator, Bruce Epp. Epp testified that after each robbery he participated in, Smoot and Cook would sit in their apartment and count the money. *See* N.T., 2/6/14, at 119, 130-31.

The trial court was clearly aware of circumstances that could reasonably cause Cook to fear that her testimony at Smoot's trial would expose her to criminal liability. Even if her direct testimony was strictly limited to the testimony she provided at the suppression hearing, the Commonwealth could be expected to cross-examine her regarding the reasonableness of her professed belief that Smoot had legally obtained the money they used to pay the rent. This cross-examination *could* have produced further evidence that exposed her to a receiving stolen property charge. *See* 18 Pa.C.S.A. § 3925 (requiring, at a minimum, a belief that the property has probably been stolen). Accordingly, we conclude that Smoot's underlying claim does not have arguable merit. The PCRA court did not err in denying Smoot relief on this claim.

In his final, related, argument, Smoot claims trial counsel was ineffective for not introducing Cook's suppression hearing testimony when she became unavailable due to her assertion of privilege. Smoot believes that such testimony could have been admitted as an exception to the hearsay rule.

Since Cook successfully invoked her privilege against self-incrimination, she was therefore considered to be unavailable as a witness. *See* Pa.R.E. 804(a)(1). Given that she was unavailable as a witness for Smoot, he could

present her former testimony from the suppression hearing if the Commonwealth had an opportunity and similar motive to develop that testimony by cross-examination. **See** Pa.R.E. 804(b)(1).

Here, trial counsel sought to present Cook's testimony during the trial in an attempt to establish that Smoot had been coerced into confessing to the burglaries. **See** N.T., 11/26/18, at 122-123. Attempted utilization of this testimony featured the same motive as when trial counsel used her testimony at the suppression hearing. **See id**. It is undisputed that the Commonwealth had an opportunity to cross-examine Cook at the suppression hearing. And, under these circumstances, we conclude that the Commonwealth had a similar motive for developing her testimony as to whether Smoot's confession was coerced. **See Commonwealth v. Strong**, 825 A.2d 658, 663-664 (Pa. Super. 2003) (holding that a since-deceased witness's testimony at a prior trial, as well as from a PCRA hearing, would be admissible at appellant's retrial, since the subject matter of his testimony at all three proceedings was similar); **see also Commonwealth v. Mitchell**, 152 A.3d 355, 358 (Pa. Super. 2016) (concluding that appellant had full and fair opportunity to cross-examine witness at preliminary hearing). As the PCRA court properly concluded, Smoot has established arguable merit to this claim.

Nonetheless, the Commonwealth urges us to find that counsel had a reasonable strategy for this decision, arguing that "[a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded

that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." Commonwealth's Brief, at 53-54 (citation omitted). However, the Commonwealth's argument presumes trial counsel chose not to present Cook's suppression testimony as a matter of strategy. Contrary to that assumption, trial counsel admitted that he did not have any strategy or tactical reason for not offering Cook's prior testimony. **See** N.T., 11/26/18, at 132-34. Instead, he testified that his failure to present Cook's suppression testimony was an "oversight." **See id.**, at 134. As such, we cannot accept the Commonwealth's suggestion to weigh counsel's "strategy" against another possible strategy, as we must avoid "*post hoc* rationalization of counsel's conduct." **See Commonwealth v. Gibson**, 951 A.2d 1110, 1124 (Pa. 2008) (citation omitted).

We therefore turn to whether Smoot has established that the outcome of his trial would have been different had counsel entered Cook's suppression testimony into evidence at Smoot's trial. As noted previously, trial counsel sought to use this evidence to challenge the credibility of Smoot's confession to the burglaries. Smoot highlights counsel's belief that discrediting the confession was central to his defense strategy and argues that his confession was "probably the most probative and damaging evidence" that was admitted against him. **See** Appellant's Brief, at 44-45 (citation omitted).

While Cook's testimony would undoubtedly have assisted Smoot in his defense against the charges, we cannot conclude the PCRA court erred in

- 18 -

finding that Smoot failed to establish that there is a reasonable possibility the testimony would have affected the outcome of his trial. Cook, as Smoot's roommate, paramour, and the mother of his child, was clearly a biased witness. Her testimony as to her condition and observations concerning the circumstances of her questioning by detectives was directly contradicted by Detective Fuhrmann. *See* N.T., 2/6/14, at 293-94, 299, 304-9. Epp, Smoot's co-conspirator, implicated her as a possible conspirator or accomplice to the burglaries. *See id.*, at 119, 130-31. And the Commonwealth was prepared to present evidence that she had admitted to detectives that she was at the very least aware of the illegal source of Smoot's money. *See* N.T., 1/16/19, at 76.

The Commonwealth had ample evidence to contradict and discredit Cook's testimony that she had been used to coerce Smoot into confessing. Under these circumstances, we cannot conclude that the PCRA court erred in finding that there is no reasonable probability that Cook's testimony would have caused a different result. Smoot's third and final issue on appeal does not merit relief.

As Smoot has failed to establish that the PCRA court erred, we affirm the order dismissing his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/15/2020</u>